

Karen E. Keller
I.M. Pei Building
1105 North Market St., 12th Floor
Wilmington, DE 19801
(302) 298-0702
kkeller@shawkeller.com

July 17, 2019

**VIA CM/ECF & HAND DELIVERY**
The Honorable Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street - Unit 28
Room 2325
Wilmington, DE 19801-3555

Re:   *Sound View Innovations, LLC v. AMC Networks, Inc., et al.,* C.A. No. 19-145-CFC-CJB;
*Sound View Innovations, LLC v. CBS Interactive Inc., et al.,* C.A. No. 19-146-CFC-CJB;
*Sound View Innovations, LLC v. The CW Network, LLC,* C.A. No. 19-147-CFC-CJB;
*Sound View Innovations, LLC v. HSN, Inc.,* C.A. No. 19-193-CFC-CJB; and
*Sound View Innovations, LLC v. QVC, Inc.,* C.A. No. 19-194-CFC-CJB

Dear Judge Burke:

      In order to streamline discovery in this case, Sound View agreed to produce documents from prior litigations involving the patents-in-suit. D.I. 22[1] (May 17, 2019 Scheduling Order Letter) at 2; *see also* Ex. 1 (June 3, 2019 Conference) at 15:12-19 ("[I]t is our intention to produce whatever we can from the prior litigations. ... [W]e have no problem going ahead and producing [those documents]."); 24:3-8 ("I have no problem producing whatever we have in our possession."). These documents have already been fully vetted and produced in those prior litigations, and they are unquestionably relevant to this case—they include documents produced by the original owners of the patents-in-suit, Nokia (who purchased Alcatel/Lucent), as well as information from third parties who supply the allegedly infringing software to the Defendants in these actions and the defendants in other actions. However, Sound View is now backtracking and refusing to provide any timeline for production of its own documents that contain third party confidential information or the Nokia documents.  This defeats the very point of the streamlined discovery procedure both parties agreed to.  Defendants have proposed an orderly procedure that allows any third party 30 days to object prior to production of the documents. View should not be allowed to drag out production of these documents indefinitely and prevent Defendants from obtaining this fully vetted collection of facially relevant documents.

      Sound View has only agreed to produce documents containing its own information (which is limited given it is a non-practicing entity and not the original owner of the patents-in-suit) and its license agreements under the following procedure:

- Sound View will produce such documents that are not subject to confidentiality obligations (e.g. contractual agreements and protective orders in prior cases).
- With regard to Sound View documents that are subject to contractual confidentiality obligations, Sound View will, within 14 days of the entry of a protective order in these cases, notify the relevant third parties of the prospective disclosure of their confidential

---

[1] Docket numbers cited refer to filings in C.A. No. 19-145-CFC-CJB.

> information and provide them with a copy of the protective order. If a third party fails to object by seeking a protective order within 30 days of receiving the notice and copy of the protective order, Sound View will work to promptly produce that third party's information. If a third party timely seeks a protective order, Sound View will not produce any information that is the subject of the third party's objection before the Court rules that it may do so. Sound View will update Defendants as to the status of third party notifications within 35 days from the date a protective order is entered in this case.
>
> - If any third party seeks a protective order, Defendants shall respond to the third party's motion and shall bear all costs associated with doing so. D.I. 42 at 1.

There is no sound reason that the same procedure should not be applied to Sound View's documents from the prior litigations containing third party confidential information and the Nokia production. Nokia is not an uninterested party, but a party that monetized these patents by selling them to Sound View, which has in turn asserted them against numerous industry players.

Sound View's arguments to the contrary are meritless. First, Sound View argues that if the Court adopts Defendants' procedure, Sound View will be facing "competing court orders." D.I. 50 (Sound View's Letter Brief) at 1. This is a red herring. The procedure in the protective order it identifies ("Hulu Protective Order"), in a section entitled "Protected Material ... Ordered Produced in Other Litigation," merely requires notice and an opportunity to seek a protective order. D.I. 50-1, § 11.1(a), 11.1(d).[2] This is squarely in line with Defendants' proposed procedure. Nothing about the Hulu Protective Order needs to be "modif[ied]," as Sound View claims. D.I. 50 at 2. Sound View also suggests that Defendants must file a motion to compel (*id.*), but nothing in the Hulu Protective Order requires that. Furthermore, motions to compel would bury the Court and the parties in papers regarding documents which Sound View has agreed to produce. This is exactly why Defendants requested a streamlined procedure for production of the documents from the prior litigations involving the patents-in-suit.[3]

Second, Sound View argues that a Court order is "premature." *Id.* It is not. The Court has entered the Protective Order. D.I. 52. Claim construction is around the corner—opening briefs are due in October 2019—and the parties are in the middle of preparing infringement and invalidity contentions. Defendants are not trying to create a fire drill, but Defendants requested these documents over two months ago. See, e.g., D.I. 22 at 2. At the status conference on June 3, Sound View claimed this issue was premature because the parties had not "even gotten started with the discovery process." Ex. 1 at 16:15-23. But now it is over six weeks later, and despite

---

[2] Sound View suggests that this provision was meant to put the producing party in the same position as if a motion to compel had been filed, but provides no support for this statement. D.I. 50 at 2 n.2. Indeed, the fact that there is a separate "Miscellaneous" provision dealing with pending motions (D.I. 50-1, § 15.6) shows that the parties contemplated different scenarios, including an existing Court order for production of confidential information.

[3] Sound View argues it does not "properly have possession, custody, or control" of the Nokia documents because its in-house counsel cannot see the documents. D.I. 50 at 1 n.1. Sound View cites no case law for this proposition. Nor does it make sense. Sound View's outside attorneys only have access to the documents because they were produced to Sound View.

Defendants' attempts to work with Sound View to create an orderly procedure for production, Sound View refuses to provide any timeline other than vague assurances it is "cooperating." D.I. 50 at 2. Without a Court order governing this process, third parties will have no incentive to timely address document production requests. Given the large stock of fully vetted, highly-relevant documents, providing third parties a deadline is in the interest of both parties and the Court and will prevent these issues from lingering indefinitely and perpetuating more disputes.

Furthermore, Sound View has agreed to a nearly identical provision in the Protective Order for disclosure of third party confidential information in both its documents and Defendants' documents. D.I. 52, § 21. Specifically, in response to a valid discovery request, a party must notify any third party whose confidential information is going to be produced and the third party then has 30 days to file a motion for a protective order. *Id*. Sound View provides no reason why this same procedure should not apply to its documents from prior litigations that contain third party confidential information. Creating a loophole for some of the most relevant documents, which are in Sound View's possession, would create an unequal playing field where Defendants are promptly producing their own documents with third party confidential information under the Protective Order provision, but Sound View is allowed to drag out indefinitely the production of documents from prior litigations with third party confidential information.

As an alternative to denying Defendants' request, Sound View proposes that the Court treat this letter as a motion to compel. But this is not a motion to compel. Instead, it is a discovery letter regarding the procedures for document production. Furthermore, as discussed above, requiring motions to compel is both impractical and inefficient, conflicts with the agreed upon Protective Order, and would inundate the court with discovery letters.

In short, Sound View should not be allowed to further delay its production of documents from the original owners of the patents-in-suit, Nokia (which purchased Alcatel/Lucent), as well as all other third parties, including the prior defendants and third parties who supply the allegedly infringing software both to the Defendants in this action and the prior defendants. Defendants respectfully request an Order from this Court requiring Sound View to notify within 14 days third parties of the production of their confidential information in the following documents and if the third party fails to seek a protective order within 30 days of receiving notice, promptly produce the following documents:
(1) documents that Sound View previously produced in litigation involving the patents-in-suit;
(2) license and settlement agreements that cover at least one of the patents-in-suit;
(3) Sound View's pleadings, discovery responses, and other documents Sound View served in litigation involving the patents-in-suit; and
(4) documents produced by Nokia or Alcatel/Lucent in litigation involving the patents-in-suit.

Shaw Keller LLP
The Honorable Christopher J. Burke
Page 4

                            Respectfully submitted,

                            */s/ Karen Keller*

                            Karen Keller